**BIRMINGHAM POST COMPANY,**
Appellant,

v.

**Christina BROWN, Appellee.**

**No. 15024.**

United States Court of Appeals
Fifth Circuit.

Nov. 24, 1954.

Kenneth Perrine, Birmingham, Ala., Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, Ala., for appellant.

D. G. Ewing and Earl McBee, Birmingham, Ala., for appellee.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

Plaintiff brought this action on December 22, 1952, claiming compensatory and punitive damages on five counts of libel, invasion of the right of privacy, and conspiracy to defame. Defendant moved to dismiss the complaint on the ground, among several others, that there was no diversity of citizenship.[1] This motion was denied without any affidavits or evidence having been taken, and defendant then filed an answer, containing various defenses on the merits, as well as contesting the plaintiff's alleged residence in Texas. On pretrial hearing, the court set forth in an order a statement of the issues agreed by the parties to be in controversy, one of which was stated to be:

"In abatement, defendant insists that there is no diversity of citizenship between plaintiff and defendant."

This issue was not decided *in limine* on a special hearing or on affidavits, prior to the actual trial, as is the customary practice, see Hardin v. McAvoy, 5 Cir., 216 F.2d 399, but the case went to trial on the merits, on September 21, 1953. On that date plaintiff filed an amendment to her complaint, the substantial effect of which was to add to the complaint three counts of trespass for breaking and entering a hotel room in which plaintiff was a guest on December 21, 1951. Again the Court did not rule upon the amendment, but instead allowed the trial to proceed to the presentation of the plaintiff's evidence. Upon conclusion

thereof, defendant moved for a directed verdict upon its substantive defenses as well as on the issue of diversity, assigning as grounds for the latter that the evidence showed:

"That at the time * * * suit was filed in December of 1952 there was outstanding against the plaintiff for her arrest, a warrant by the City of Birmingham, and that her domicile was truly, and in fact Birmingham, Alabama, but she refused and failed to return to Birmingham, due to the fact that she was fleeing from said warrant for her arrest so outstanding, and that she did not change her domicile or residence, but that her residence on the date that her suit was brought was Birmingham, Alabama, and there was no diversity of citizenship."

The Court reserved ruling on this motion until after defendant presented its evidence, whereupon the Court denied the motion with respect to diversity of citizenship, and submitted to the jury the particular question, whether plaintiff had acquired a domicile of choice in Texas. The Court's charge to the jury on this question included the following statement:

"The burden is on the defendant reasonably to satisfy you that she was not a citizen of Texas, * *."

No exception was taken to the charge. The jury then returned a verdict for the plaintiff on the jurisdictional issue. At that point, after close of all the evidence, the Court granted defendant's motion for a directed verdict on all counts of the original complaint, and at the same time permitted plaintiff's amendment to add the new cause of action in trespass. No amendment was made of the defendant's answer, but the Court let the record show that the defendant was regarded as denying any trespass, and that its motion for

---

1. Although this motion, as well as defendant's subsequent answer, avoids a direct denial of plaintiff's alleged Texas citizenship, it nevertheless presented the issue intelligibly enough to require the court to examine and pass upon this question, under the special rules relating to jurisdictional questions of fact discussed subsequently in this opinion.

a directed verdict was deemed addressed to the trespass cause of action also. The case was submitted to the jury, which returned a verdict of $3500 for the plaintiff. Defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial, such motion having the same grounds as the motion for directed verdict. The motion was denied, and then this appeal was taken on numerous grounds.

There is no question that a serious error was committed by the District Court in charging that the burden of proof was on the defendant to show plaintiff was not domiciled in Texas. No matter how the issue is raised, whether by motion, by answer, or upon the Court's own initiative, the burden of proving all jurisdictional facts rests upon the plaintiff or person asserting that the Court has jurisdiction.[2] McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Town of Lantana, Fla. v. Hopper, 5 Cir., 102 F.2d 118; Mid-Continent Pipe Line Co. v. Whiteley, 10 Cir., 116 F.2d 871. It matters not that defendant failed to except to the Court's erroneous charge, because the question whether the district court had jurisdiction *asserts itself* in every case appealed to or otherwise coming before us. In Mansfield, Coldwater & L. M. R. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462, the Supreme Court said:

"On every writ of error or appeal the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."

And the same principle was vigorously expressed in Yocum v. Parker, 8 Cir., 130 F. 770, 771, 66 C.C.A. 80:

"Courts of the United States are of limited jurisdiction, and the cases of which they have cognizance are specially circumstanced. Hence the presumption that a cause is without the jurisdiction of one of those courts unless the contrary affirmatively appears from the record. This doctrine was announced more than a century ago by the Sureme Court (Turner v. Bank [of North America], 4 Dall. 8, 1 L.Ed. 718), and it has since been frequently applied and unvaryingly adhered to. The question of jurisdiction is self-asserting in every case. It arises although the litigants are silent. Even their consent cannot authorize cognizance if fundamental grounds of jurisdiction are absent."

See also, Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Scott v. Sandford, 19 How. 393, 60 U.S. 393, 15 L.Ed. 691.[3]

---

2. In her supplemental brief, plaintiff cites four cases for the proposition that where a person has changed his abode, and has remained in his new residence for a long time, under circumstances indicating an intention to remain indefinitely, there is a presumption that he intends to make the new place his domicile. Two of these cases are tax cases and a third is an admiralty prize case. Undoubtedly there may be such a presumption where the fact of domicile is not material to the issue of jurisdiction, but that does not enter here. Certain language in the fourth case, Shelton v. Tiffin, 6 How. 163, 47 U. S. 163, 185, 12 L.Ed. 387, lends ostensible support to this proposition, but an examination of its context shows that the language meant nothing more than that such evidence is sufficient to support a finding by the trial court that there was diversity between the parties. Thus none of these cases is in point.

3. This rule is a firm principle of our jurisprudence, resting upon the constitutional limitations of the federal judicial branch; accordingly, it is unnecessary to rely upon the so-called doctrine of "plain error" enounced by us in Dowell, Inc., v. Jowers, 5 Cir., 166 F.2d 214, 2 A.L.R.2d 442, to review the error made by the trial court with regard to the jurisdictional

■ The trial court was evidently under a mistaken impression that the manner in which the issue of diversity is raised affects the burden of proof. This is indicated by the opening sentence of his charge to the jury:

"Gentlemen of the jury, at this time I am going to submit to you for your decision the issue involved in what is known to lawyers as the defendant's plea in abatement."

Now, pleas in abatement have been long abolished by R.C.P.Rule 7(c), 28 U.S.C., and matters in abatement are under the present rules raised by answer or motion, or both, as in the present case. A full explanation, which should eliminate further confusion in this matter, is quoted here from McNutt v. General Motors Acceptance Corp., supra, 298 U.S. at pages 183–189, 56 S.Ct. at pages 782–785:

"Where the pleadings properly alleged the jurisdictional facts, as, for example, with respect to diversity of citizenship and jurisdictional amount, it was necessary at common law, and before the passage of the act of 1875,[4] to raise the issue of want of jurisdiction by plea in abatement. And where the jurisdictional issue was thus raised, the burden of proof was upon the defendant. The objection was waived by pleading to the merits[5]. * * * Demurrers and pleas were abolished * * * in 1912.

* * * * * *

"The Act of 1875 prescribes a uniform rule and there should be a consistent practice in dealing with jurisdictional questions. We think that the terms and implications of the act leave no sufficient ground for varying rules as to the burden of proof. The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleadings the facts essential to show jurisdiction. * * * If he does * * *, an inquiring into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure."[6]

---

fact of the diversity of citizenship of the parties.

4. 18 Stat. 470, formerly 28 U.S.C. § 80. The Revised Judicial Code of 1948, Title 28 U.S.C., incorporated old § 80 into §§ 1359, 1447, and 1919 of the new Code. See footnote 6, infra.

5. But see, contra, Scott v. Sandford, 19 How. 393, 60 U.S. 393, 15 L.Ed. 691.

6. Although the Court in the McNutt case speaks in terms of the 1875 statute, supra footnote 4, revision of that statute in 1948 omitting the specific provision requiring courts to inquire into the factual basis of their jurisdiction did not affect the rule laid down by McNutt. The Reviser's Note to 28 U.S.C. § 1359 calls that provision "unnecessary," and explains, "Any court will dismiss a case not within its jurisdiction when its attention is drawn to the fact, or even on its own motion." Although the effect of this revision of the Judicial Code has not been discussed in any case which has come to our attention, numerous cases after adoption of the Revised Judicial Code have followed the McNutt rule as to burden of proof. See, inter alia, Jarecki v. Whetstone, 7 Cir., 192 F.2d 121; Flegenheimer v. General Mills, 2 Cir., 191 F.

■ The plaintiff's supplemental brief urges that, even if the question of diversity of citizenship were submitted to the jury on an erroneous charge, the error was harmless because the evidence showed as a matter of law that plaintiff was domiciled in Texas when the suit was initiated. With this contention we can not agree. The only evidence on the question was the testimony of the plaintiff. She testified that Texas was her "home," that she did not intend to return to Birmingham, that she has all her clothes and other property in Texas, and has a job there. That is in substance all the evidence supporting her contention that she was domiciled in Texas upon commencement of this action. For all that appears in the record, her testimony that Texas was her "home" might mean nothing more than that she resided there temporarily. Nowhere did she testify that she intended to remain in Texas indefinitely or permanently, or that she had no intention to move elsewhere. Her testimony that "I was not going to come back and face trial" and that she knew there was a warrant for her arrest when she went to Texas tend to negative the inference that she intended to make Texas her domicile, as does the fact that the place of her latest voting registration and her family's residence were in Birmingham.[7]

■ We do not conclude from this evidence that a verdict on this point should have been directed for the defendant, but we do think that if the question of diversity of citizenship had been submitted to the jury on a proper charge, it might well have been decided otherwise. Of course, the same holds true if the trial court had decided this question, as it had the right to do. Hardin v. McAvoy, decided by this Court October 29,

1954. That is to say, if the trial court, taking cognizance of the proper rule as to burden of proof, were to decide the question on the evidence in the present record, he might certainly conclude that the plaintiff has not sustained that burden, and that the Court had no jurisdiction. Since the Court or jury trying the question may evaluate the credibility and the degree of certainty and conviction of a witness' answers, this is a question of fact which falls typically within their province.

Therefore, the judgment must be reversed and the case remanded to the trial court for its action in accordance with the principle herein stated.

Reversed and remanded.

---

2d 237. We are satisfied that the common law rule as to burden of proof, resting upon an obsolete system and theory of pleading, was not reincarnated by the 1948 Revision eliminating the statutory provision as "unnecessary"; and indeed, that the reasoning of McNutt did not actually depend on that statutory provision.

7. This evidence, we believe, falls considerably short of that which we held established domicile as a matter of law in Hardin v. McAvoy, supra, and Paudler v. Paudler, 5 Cir., 185 F.2d 901.