**W. B. UHLHORN, d/b/a W. B. Uhlhorn Construction Co.**

v.

**Paul OWENS et al.**

**Civ. A. No. 1466.**

United States District Court
S. D. Texas,
Brownsville Division.

Nov. 19, 1962.

Orrin W. Johnson, Harlingen, Tex., for plaintiff.

Woodrow Seals, U. S. Atty., Houston, Tex., Homer M. Lopez, Asst. U. S. Atty., Brownsville, Tex., and Lorence L. Bravenec, Dept. of Justice, Washington, D. C., for defendant and plaintiff in intervention, the United States.

Kelley, Looney, McLean & Littleton (Ralph L. Alexander), Edinburg, Tex., for defendant Security State Bank of Pharr, Texas.

Will Wilson, Atty. Gen., of Texas, and Sam Lane, Asst. Atty. Gen., Austin, Tex., for intervenor State of Texas.

W. L. Lemen, San Juan, Tex., for defendant Central Valley Ready-Mix Co.

GARZA, District Judge.

This case was originally filed in State District Court by W. B. Uhlhorn d/b/a W. B. Uhlhorn Construction Co., as a bill of interpleader against Paul Owens and Jack Dooley, individually and d/b/a Valley Lathing & Plastering Company, Security State Bank of Pharr, Central Valley Ready-Mix Company, G & G Lumber Company, Damacio Reyna, Rolando Munoz, L. E. Travis & Sons, Inc., and the United States of America as Defendants. The United States of America removed the case to this Court.

After removal, the Government, not satisfied with the mere position of a defendant in the interpleader action, filed an intervention pursuant to Sections 7401 and 7403 of the Internal Revenue Code of 1954.

Uhlhorn Construction Co. had the primary contract to build the Falcon Housing Project at Falcon Heights, Texas, with the International Boundary & Water Commission. The work to be performed under said contract was for a housing project to be used in conjunction with Falcon Dam.

Uhlhorn then entered into a written subcontract with the Defendant Paul Owens, d/b/a Paul Owens Lathing Company, on or about April 27, 1960, and the obligation of the subcontract was thereafter assumed by and transferred to the Defendants Owens and Dooley, d/b/a Valley Lathing & Plastering Company, who proceeded to perform it. On May 14, 1960, the subcontractor assigned all the proceeds due the said subcontractor under and by reason of said contract to the Defendant Security State Bank of Pharr, Texas, and authorized Uhlhorn to make checks payable jointly to said subcontractor and said bank. The bank, under said assignment, made advances to the subcontractor, and the amount still owed on said advances, by the subcontractor to the bank, is in excess of the amount still due them under this contract.

The prime contractor and interpleader, Uhlhorn, towards the close of not only

800

the subcontract but the prime contract, even though they had an affidavit signed by Jack Dooley in behalf of Valley Lathing & Plastering Company that all bills had been paid, became aware of several claims, and they have tendered into court the sum of $4,893.45 as the balance retained under the subcontract, and has asked the Court to determine the rightful claimants to said amount.

G & G Lumber Company and L. E. Travis & Sons, Inc., have disclaimed. Reyna and Munoz have never appeared to press their claims. The State of Texas has intervened, claiming a lien for delinquent unemployment taxes against the subcontractors in the sum of $1,028.34.

Prior to the issuing of the affidavit mentioned above by Dooley, according to their last estimate submitted to Uhlhorn, Uhlhorn owed them on the contract the sum of $4,977.00, and on the oral representation of the subcontractor that all bills were paid, Uhlhorn had prepared a check, dated May 10, 1961, in said amount. They held the check, however, until May 18th, when the Defendant Dooley came and made the verbal assertion that the subcontract had been fully completed, that all bills for labor and materials had been paid and satisfied, and that he was, therefore, entitled to said check for $4,977.00. The check in that amount, made payable jointly to the subcontractor and to the bank, was then delivered.

Shortly after delivering said check, Uhlhorn was advised by the International Boundary & Water Commission that there was in fact an outstanding unpaid bill for materials due by the subcontractor to G & G Lumber Company, and Uhlhorn proceeded to stop payment on the check for $4,977.00.

The bank, in turn, in this case has filed a cross-action against Uhlhorn, claiming that by relying on the issuance of the check for $4,977.00, it released all the notes that the subcontractor had with them, with the exception of one. They allege in their cross-action that they were misled by Uhlhorn, through its agents, that the check for $4,977.00 was good, and that Uhlhorn is now precluded and estopped to stop payment on said check or refuse to pay said check.

The Court, after a hearing, has ruled adversely on the cross-action of the bank against Uhlhorn, finding that Uhlhorn was within his rights in stopping payment on the check and could not be estopped or precluded from stopping payment on the same.

Uhlhorn, after stopping payment on said check of $4,977.00, on the advice of the subcontractor and with its consent, paid G & G Lumber Company the sum of $439.30, resulting in the amount which he has tendered into Court.

■■ The mechanics' liens of Valley Ready-Mix Company, Damacio Reyna and Rolando Munoz, even if treated as mechanics' liens, have not been perfected and reduced to judgment, and therefore are inchoate and not superior to the claim of the Government; and since the amount involved is less than that claimed by the Government, they are out of the case as far as the funds in court are concerned. The same holds true for the claim of the State of Texas; and as far as the money in court is concerned, the State of Texas does not have any right to the same.

That leaves for disposal the controversy between Security State Bank of Pharr, Texas, and the Government, as to the priority of their liens.

Security State Bank has taken the position that its assignment from the subcontractor was a protected assignment and was a choate interest; that its assignment was prior in time to the filing of the Government's tax liens which are for a greater amount than the amount tendered into court. The amount due by the subcontractor to the Security State Bank is also in excess of the amount tendered. So a ruling on the priority of the liens as between the Bank and the Government will resolve the question of who is entitled to the money now in court.

■ There is no question that in order for the assignment held by the bank

to be a valid assignment, it had to be taken under Article 260–1, Vernon's Texas Civil Statutes. This was the same statute involved in the case of United States v. R. F. Ball Construction Co., Inc. et al., which is to be found in R. F. Ball Const. Co. v. Jacobs, D.C., 140 F. Supp. 60; 5 Cir., 239 F.2d 384, and 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, as it existed before the 1957 amendment to the same.

The pertinent part of said statute is Section 1(1) which reads as follows:

"Section 1(1) 'Account' or 'account receivable' means an existing or future right to the payment of money presently due, or to become due (a) under an existing contract or under a future contract entered into during the effective period of the notice of assignment hereinafter provided for; (b) which right to payment is not secured by a chattel mortgage, a conditional sale contract, or other instrument which may be filed for record in a public office of this or another state or of the United States and which instrument was given at or before the time the account was assigned and reserves the title to, or creates a lien upon, goods, the sale of which gave rise to the account; and (c) which right to payment is not represented by (A) a judgment, (B) a negotiable instrument, or (C) a non-negotiable instrument which so represents the obligation that an assignee who takes possession of it takes rights superior to those of a prior assignee of the obligation who did not take possession of the instrument; and (d) the assignment of which right is not subject to special statutory provisions of the state or of the Federal Government relative to the rights of creditors of the assignor or to successive assignees from the assignor; *'account' or 'account receivable' shall not include any sums of money accruing to a contractor for labor performed or material furnished on any public or private con-*

*struction contract unless the assignment properly describes the land upon which the improvements are to be constructed and such assignment filed in the office of the County Clerk of the county wherein the land lies; which assignment shall not be effective prior to such filing.* As amended Acts 1955, 54th Leg., p. 822, ch. 305, § 1; Acts 1957, 55th Leg., p. 818, ch. 348, § 1." (Emphasis supplied.)

As reflected in the above quotation, the italicized portion of Article 260–1 was added by the 55th Legislature in 1957, Acts 1957, 55th Leg., p. 818, ch. 348, sec. 1. As the Act was originally enacted, the italicized portion of said Section 1(1) was omitted entirely. Acts 1945, 49th Leg., p. 463, ch. 293. In 1955, this Section was amended to add to the original text of Section 1, the following:

" '[a]ccount' or 'account receivable', however shall not include any sums of money accruing to a contractor for labor and/or material performed and/or furnished on any public or private construction contract where such assignor (contractor) has furnished a surety bond guaranteeing the performance of the contract and/or the payment of labor or other material bills incurred thereon." Acts 1955, 54th Leg., p. 822, ch. 305.

Insofar as matters pertinent to this case are concerned, this was the wording of this Section at the time of the amendatory Act of 1957.

In 1957 the 55th Legislature purportedly enacted House Bill No. 698, Acts of 1957, 55th Leg., p. 818, ch. 348, sec. 1. Although said bill, in Section 1 thereof, purportedly enacted, as an amendatory act, Section 1(1) of Article 260–1 as quoted above, the caption given said Act was as follows:

"An Act relating to protected assignments of accounts receivable; amending subdivision (1) of Section 1 of Chapter 293, Acts of the Forty-ninth Legislature, as amended (Article 260–1, Vernon's Texas

Civil Statutes), so as to change the definition of 'account' or 'account receivable' by deleting provisions excluding sums accruing to a contractor who has furnished a surety bond; and declaring an emergency."

The emergency clause contained in said Act, as Section 2 thereof, reads as follows:

"Sec. 2. The fact that the present definition of 'account' or 'account receivable' prevents contractors from obtaining interim financing by pledging accounts receivable, resulting in serious impediment to the financing of construction projects, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and this Rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted."

If the Assignment Act, as it existed at the time of the assignment from the subcontractor to the bank, is followed, the assignment held by the Security State Bank was not perfected because the assignment failed to describe the land on which the subcontractor was building, and the same was not recorded in the county where the land lies.

The bank contends that the amendment to said Act in 1957 was unconstitutional because the caption of the Act did not authorize the amendment as finally passed, in violation of Article III, Section 35, of the Texas Constitution, Vernon's Ann.St. It claims that since there is a variance between the title (or caption) and the subject of the Act, the same cannot be given validity because of the constitutional provision that the caption (or title) shall sufficiently give notice to members of the Legislature and the public of the provisions of the Act.

■ With this contention, this Court cannot agree. There is no question that the purpose of the amendment was to make interim financing for contractors available from lending institutions. The amendment makes this possible, but provides that the assignment must describe the land on which contracts are being performed, and the assignment must be recorded in the county where the land lies, before it can be effective. Section 35, Article III, of the Texas Constitution is to be interpreted liberally, not strictly, in favor of the validity of legislation. Consolidated Underwriters v. Kirby Lumber Co., 267 S.W. 703, 705 (Tex.Com. App.1924).

■■ A liberal interpretation of the caption and the amendment can lead this Court to no conclusion other than that the 1957 amendment of Article 260–1 is valid and constitutional. Article 260–1, as now written, would, in my opinion, give the bank in this case the status of a mortgagee under Section 6323, Title 26 U.S.C.A. However, the Security State Bank failed to describe the land in its assignment, and failed to record the assignment in the county where the land lies, and its assignment, therefore, is unperfected, imperfect and inchoate.

The Supreme Court has imposed a perfected lien standard on lien interests that are recognized under Section 6323. United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871; United States v. Colotta, 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725; United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L. Ed. 520; United States v. Security Trust & Savings Bank of San Diego, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53.

Although the assignment of the bank, if good, was prior to the liens of the Government, I find that the assignment of the bank was inchoate and unperfected. Therefore, the provisions of Section 6323, Title 26 U.S.C.A., do not apply, and the liens of the Government must be given priority.

■ The only question remaining is the question of attorney's fees to be taxed as costs in behalf of the Interpleader Uhlhorn. At the conclusion of the hearing in this case, the Court found

that Uhlhorn was due a certain sum as attorney's fees for having had to file his interpleader; but under the authority of United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268, when the Government prevails, no attorney's fees can be taxed as costs against it, so the claim of the Interpleader Uhlhorn for attorney's fees is denied.

The Government may have its deficiency judgment as against the Defendants Owens and Dooley for the balance of its liens not covered by the amount in court.

Clerk will notify counsel, and counsel for the Government will prepare a judgment to be entered.