UNITED STATES of America and Ellis Campbell, Jr., Appellants,

v.

CREAMER INDUSTRIES, INC., Appellee.

No. 21188.

United States Court of Appeals Fifth Circuit.

July 2, 1965.

John R. Brown, Circuit Judge, dissented.

Robert J. Golten, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Dept. of Justice, Washington, D. C., H. Barefoot Sanders, U. S. Atty., T. Gary Cole, Asst. U. S. Atty., of counsel, for appellants.

R. B. Cannon, Fort Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This action was brought by a purchaser from the taxpayer. The deed had inadvertently failed to include certain real property located in Tarrant County, Texas. A correcting deed was executed and recorded after the tax lien was filed. The question is whether the federal tax lien attaches to the property erroneously omitted from the original deed.

On January 21, 1959, Creamer Industries, Inc., the ultimate purchaser, and Maxwell Steel Company, Inc., the taxpayer, entered into a contract whereby all of Maxwell's assets were to be transferred and conveyed to Creamer. The consideration paid by Creamer was $183,000 and the assumption of some of Maxwell's indebtedness, amounting in total to more than $1,100,000. By inadvertence the contract failed to list or describe in any way the six lots of land, five of which are the subject of this lawsuit. The deeds executed on the same day likewise omitted these six lots.

On March 24, 1959, the United States made a jeopardy assessment against Maxwell for $430,523.09, which included past due income taxes and excise taxes. Notice of the tax lien which arose by virtue of the assessment was filed on March 26, 1959, two days after the assessment.

Thereafter, on or about April 1, 1959, Maxwell executed and delivered a correcting deed, conveying these lots to Creamer. The deed was back-dated to January 21, 1959, but was recorded on April 28, 1959.

■ Before discussing and deciding the merits, we must dispose of a question of jurisdiction. While Professor Moore questions with deference whether such an inflexible rule is needed or sound,[1] the present rule is that a fundamental question must be raised sua sponte by a federal appellate court first as to its own jurisdiction and then as to the jurisdiction of the court from which the appeal comes.[2] Jurisdiction of this

---

1. 1 Moore, Federal Practice ¶ 0.60 [4], p. 610.

2. Mansfield C. & L. M. Ry. Co. v. Swan, 1884, 111 U.S. 379, 382, 4 S.Ct. 510,

appeal from a final decision of the district court is conferred on this Court by 28 U.S.C. § 1291. While the action in the district court sought an injunction, we think that the district judge did not err in treating it as a suit to quiet title to real property clouded by a federal tax lien. The complaint alleged that the proceeding is brought under 28 U. S. Code § 2410. The district court stated: "So far as Section 2410 is a point, I do not see any attending lack of jurisdiction in this suit. United States v. Morrison [5 Cir.] 247 F.2d 285." The Ninth Circuit disagrees with our decision in United States v. Morrison, supra, relied on by the district court, but bases jurisdiction of a suit to quiet title to land attacking the validity or priority of a federal tax lien upon 28 U.S.C. § 1340.[3] The Government has now abandoned its attack upon the jurisdiction of the district court. Upon one basis or another, we are satisfied that there was no lack of jurisdiction.[4]

■ The district court based its ruling with the plaintiff Creamer upon two conclusions of law, expressed as follows:

"1. It is manifest as a matter of law that the buyer corporation had become 'purchaser,' in the most literal sense of Section 6323(a), as to the great mass of property and assets constituting the subject matter of the contract between the two corporations, and stood in that position thereunto at the time the tax lien was filed.

"2. The two corporations had a single contract of sale and, although the subject matter included a multiplicity of items, there was simply a common and blanket consideration for the whole property, and consequently it would be too rigid in the light of the 'realities' referred to in the Regulation to split the concept of 'purchaser' and say that the buyer corporation, at the time the tax lien was filed, had become a 'purchaser' in very large part, but had not become a 'purchaser' as to the very minor part of the subject matter in the contract of sale."

26 U.S.C. § 6323(a) referred to by the district court reads, in pertinent part, as follows:

"§ 6323. *Validity against mortgagees, pledgees, purchasers, and judgment creditors*

"(a) *Invalidity of lien without notice.*—* * * the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—"

That statute was recently considered by this Court in Fore v. United States, 5 Cir. 1964, 339 F.2d 70. As implicit in that decision, and as held in one of the cases there cited,[5] the purpose of the statute was "to protect mortgagees, purchasers and judgment creditors against a secret lien for assessed taxes and to postpone the effectiveness of the tax lien as against these interests until the tax lien was filed." In the present case, as has been seen, the United States made the jeopardy assessment on March 24, and notice of the tax lien was filed on March 26. During the two intervening days there was no happening or occurrence which could change Creamer's rights in the slightest. The rights of the parties were the same at the time the lien arose

28 L.Ed. 462; McNutt v. General Motors Acc. Corp., 1936, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135; Birmingham Post Co. v. Brown, 5 Cir. 1954, 217 F.2d 127, 130.

3. Shaw v. United States, 9 Cir. 1964, 331 F.2d 493, 496; United States v. Coson, 9 Cir. 1961, 286 F.2d 453, 456–459.

4. See the annotation in 5 L.Ed.2d 867–887 on "Construction and application of statute [28 U.S.C. 2410(a) (c)] dealing with actions affecting property on which the United States has a lien."

5. United States v. Pioneer American Ins. Co., 1963, 374 U.S. 84, 89, 83 S.Ct. 1651, 10 L.Ed.2d 770; see also United States v. Gilbert Associates, 1953, 345 U.S. 361, 363–364, 73 S.Ct. 701, 97 L.Ed. 1071.

**628**

and at the time when notice was filed. In our opinion, therefore, section 6323(a) has no application to the facts of this case.

■ The sections providing for the creation of the lien are quoted in the margin.[6] The question to be decided is whether at the time of the assessment on March 24, 1959, the taxpayer, Maxwell, owned any property or rights to property in the six lots upon which the tax lien could fasten. The nature and extent of Maxwell's interest in the lots on that date must be determined by state law.[7]

As between Maxwell, the seller, and Creamer, the purchaser, Maxwell's interest may differ from its interest with respect to a creditor without notice, such as the United States. Most pertinent is the Texas recording statute, 19 Vernon's Ann.Tex.Civ.St., art. 6627:

> "All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they may be made for passing any estate of freehold of inheritance or for a term of years; and deeds of settlement upon marriage, whether land, money or other personal thing; and all deeds of trust and mortgages shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice, unless

they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law; but the same as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof or without valuable consideration, shall be valid and binding."

■■ As to the taxes owed to it, the United States was a "creditor" within the Texas recording statute.[8] A creditor who has obtained a lien by operation of law is protected by the statute.[9] In Henderson v. Odessa Bldg. & Finance Co., just cited (n. 9), a judgment creditor asserted its lien against lot 3 which the debtor had intended to convey prior to the levy, but his deed had mistakenly described lot 5 instead of lot 3. It was held:

> "The failure to convey the lot levied upon by plaintiffs in error through mutual mistake of the parties gave defendant in error an equitable right to have the deed reformed by correction deed or a decree in equity, but, as plaintiffs in error had no knowledge of such equity at the time their levy was made, the lien thereby fixed was superior to defendant in error's right to such reformation." 24 S.W.2d at 394.

---

6. "§ 6321. *Lien for taxes*

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"§ 6322. *Period of lien*

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C.

7. United States v. Bess, 1958, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135;

Aquilino v. United States, 1960, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365; Folsom v. United States, 5 Cir. 1962, 306 F.2d 361, 368.

8. Underwood v. United States, 5 Cir. 1941, 118 F.2d 760–761; Uhlhorn v. Owens, S.D.Tex.1962, 211 F.Supp. 798, 802, aff'd per curiam "on the reasoning contained in the opinion of the trial court," Security State Bank of Pharr, Tex. v. Uhlhorn, 5 Cir. 1963, 325 F.2d 92; Hams v. Marshall, 2 Cir. 1930, 43 F.2d 703–704 (opinion by Swan, Circuit Judge, concurred in by Judges Learned Hand and Augustus Hand); Edmundson v. Scofield, S.D.Tex.1950, 92 F.Supp. 91, 95.

9. Henderson v. Odessa Bldg. & Finance Co. (Texas Comm'n of Appeals, 1930) 24 S.W.2d 393; United States v. Davidson, 5 Cir. 1943, 139 F.2d 908, 911.

That decision seems almost "on all fours" with the present case. It follows that the judgment should have gone for the defendants.

The judgment of the district court is therefore reversed and the cause remanded.

Reversed and remanded.

JOHN R. BROWN, Circuit Judge, dissenting:

This is a startling result. Laws of Texas which are designed to protect innocent persons dealing in faith on the revelations of title records are twisted to permit the great national sovereign to take property from one who is the acknowledged owner of it to apply on the tax debts of another the former owner who—as the trial Court found and this Court does not dispute—has transferred [10] the property. I do not believe that Congress ever intended any such result. I do not think that a Court should lend its hand to anything so demeaning to a sovereign.[11]

The Federal Statute creates a lien only "upon all property and rights to property * * * belonging to such person [taxpayer]." [12] Unless there is property belonging to the taxpayer, the Government's lien is nonexistent. The Texas Statute [13] which protects business creditors and those parting with consideration on the faith of apparent record title speaks in terms of the persons against whom the conveyance is not good, such has bona fide purchaser, judgment creditors, etc. Unlike this, the Federal Statute speaks in terms of the origin of the lien. The tax lien arises, the tax lien comes into being, only as to property or rights to property belonging to the taxpayer.

Clearly this property did not belong to Taxpayer. It had no right to such property. True, under Texas law a judgment creditor had a superior claim against the purchaser whose deed was imperfect for late recordation. But the one thing clear is that Taxpayer here had *no* right in or to the property.[14] Not a single Texas case could possibly be dredged up which in even the most remote way would suggest the faintest hope that Maxwell, the vendor-taxpayer, had any rights, legal or equitable, against anyone—Creamer, the public, or the Publican to get the property back or assert any interest in it.

And yet it is this—ownership by the taxpayer—which gives rise to the lien for the National Government. Congress has not said that this Nation has a tax lien against any and all property once owned by a delinquent taxpayer to the same extent as some innocent purchaser or judgment creditor might have under local recordation statutes.

Once Congress so declares, Courts must enforce it. But the morality of the Government's taking property which the Court's opinion reflects was sold to, paid for by, and in equitable conscience and law belonged to a stranger, is so disturb-

10. See, e.g., "The deed had *inadvertently* failed to include certain real property * * *. The question is whether the federal tax lien attaches to the property *erroneously* omitted from the * * * deed. * * * By *inadvertence* the contract failed to list or describe * * * the six lots of land * * *." (Emphasis supplied.)

11. I am at a loss to understand why there is any question about jurisdiction. United States v. Morrison, 5 Cir., 1957, 247 F.2d 285. Under F.R.Civ.P. 54(c) the power of the Court is not affected by the particular section of the code cited in the complaint or the magic words used to describe the relief sought.

12. 26 U.S.C.A. § 6321, note 6 Court's opinion.

13. Tex.Civ.Stat.Ann. art. 6627.

14. Texas' Article 6627, set out in the Court's opinion, does speak in terms of conveyances being "void as to all creditors and subsequent purchasers * * * unless * * * recorded * * *." But the concluding portion of the section is positive that "as between the parties * * *" the conveyance "shall be valid and binding."

ing to me that before the heavy hand of the tax gatherer falls, it is for Congress to speak clearly to declare that this is the conscience of the country.

I therefore respectfully dissent.