819 F.2d 331
 59 A.F.T.R.2d 87-1095, 87-1 USTC P 9355
 UNITED STATES of America, Plaintiff, Appellee,
v.
V & E ENGINEERING & CONSTRUCTION CO., INC., et al.,
Defendants, Appellees,
Jorge Luis Berrios and His Wife Aida L. Cruz Declet,
Defendants, Appellants.
UNITED STATES of America, Plaintiff, Appellee,
v.
V & E ENGINEERING & CONSTRUCTION CO., INC., et al.,
Defendants, Appellees,
Royal Bank de Puerto Rico, f/k/a, Banco de San Juan,
Defendant, Appellant.
UNITED STATES of America, Plaintiff, Appellant,
v.
V & E ENGINEERING & CONSTRUCTION CO., INC., et al.,
Defendants, Appellees.
 Nos. 86-1929, 86-2004 and 86-2005.
 United States Court of Appeals,
First Circuit.
 Argued March 4, 1987.
Decided May 13, 1987.
 
 Jose Manuel Ramos with whom Ramos & Latoni, Bayamon, P.R., were on brief for defendants, appellants Jorge Luis Berrios and his wife, Aida L. Cruz Declet.
 Francisco C. Santaella Conde with whom Brown, Newsom & Cordova, Hato Rey, P.R., were on brief for defendant, appellant Royal Bank de Puerto Rico, f/k/a, Banco de San Juan.
 Richard J. Driscoll, Atty., Tax Division, Dept. of Justice, with whom Roger M. Olsen, Asst. Atty. Gen., Washington, D.C., Daniel F. Lopez-Romo, U.S. Atty., for the District of Puerto Rico, Hato Rey, P.R., Michael L. Paup and William S. Estabrook, Attys., Tax Division, Dept. of Justice, Washington, D.C., were on brief for United States of America.
 Before BOWNES and SELYA, Circuit Judges, and PETTINE,* Senior District Judge.
 BOWNES, Circuit Judge.
 
 
 1
 Between September, 1978, and August, 1980, the United States government made a series of tax assessments against V & E Engineering & Construction Co., Inc. (V & E). In 1985, the government brought suit to foreclose a lien on a parcel of real property that belonged to V & E for part of the period at issue. The suit raised the issue of what priority was to be given the federal tax lien in relation to a mortgage and sale of the property by V & E in April and May, 1980. The United States District Court for the District of Puerto Rico issued a summary judgment favorable in part to the government and in part to the purchasers, Jorge Luis Berrios and his wife Aida L. Cruz-Declet (the Berrios). See United States v. V & E Engineering & Construction Co., 635 F.Supp. 153 (D.P.R.1986). A default judgment was entered against the mortgage holder, the Royal Bank de Puerto Rico, formerly known as the Banco de San Juan (the bank). A default judgment was also issued against V & E. The government, the Berrios and the bank have appealed from the district court's rulings.
 
 I. BACKGROUND
 
 2
 The material facts in this case are undisputed. In 1978 and 1979, the government made the following assessments against V & E for its failure to pay withholding taxes:
 
 
 3
 Date of Assessment Amount
------------------ ---------
September 1, 1978 $ 870.06
June 18, 1979 $8,829.25
October 29, 1979 $3,241.22
 
 
 4
 During this period, V & E owned the parcel of real property (the property) at issue in this case.[1]
 
 
 5
 On April 22, 1980, V & E mortgaged the property to the bank to guarantee the repayment of a promissory note. On May 2, 1980, V & E executed a purchase and sale agreement whereby it sold the property to the Berrios. For reasons unknown to the Berrios or the bank, neither the mortgage nor the deed of sale were recorded at the Registry of Deeds until April 25, 1982.
 
 
 6
 Meanwhile, on May 21, 1980, the Internal Revenue Service filed a Notice of Federal Tax Lien against the property with respect to the assessments described above.
 
 
 7
 On August 27, 1980, the government assessed an additional $4,294.56 and $7,022.45 against V & E for failure to pay withholding taxes. A Notice of Federal Tax Lien regarding those assessments was filed against the property on September 16, 1980.
 
 
 8
 On January 22, 1985, the government brought suit in district court to foreclose the liens. Both the Berrios and the government filed motions for summary judgment. The court ruled that the government had a valid lien on the property, but only for taxes assessed and unpaid prior to the sale of the property on May 2, 1980. Thus, the August, 1980, assessments could not be the basis for a lien on the property. The court issued a default judgment against V & E.
 
 
 9
 Since the bank had not filed any appearance, default was entered against it pursuant to Federal Rule of Civil Procedure 55(a) on May 21, 1986. On August 7, 1986, the bank moved to vacate the entry of default against it and also moved for summary judgment. On August 21, 1986, the district court entered a default judgment against the bank.
 
 II. THE GOVERNMENT'S APPEAL
 
 10
 The government contends that the property remained subject to tax liens on assessments against V & E, even after V & E sold the property to the Berrios. The government argues that, under Puerto Rico law, V & E retained a "right to property," even after the sale, within the meaning of the federal tax lien statute, 26 U.S.C. Sec. 6321 (1982).
 
 Section 6321 states:
 
 11
 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
 
 
 12
 When the government asserts a tax lien against a taxpayer's property, the threshold inquiry is directed to the nature of the legal interest the taxpayer has in the property in question. See Aquilino v. United States, 363 U.S. 509, 512, 80 S.Ct. 1277, 1279, 4 L.Ed.2d 1365 (1960). In conducting that inquiry, "both federal and state courts must look to state law." Id. at 512-13, 80 S.Ct. at 1279-80.
 
 
 13
 The government bases its argument on the Puerto Rico recording statute, P.R. Laws Ann. tit. 31, Sec. 3822 (1968). Section 3822 provides that if the same piece of real property is sold to two purchasers, the property belongs to the party who records first. The government argues that this provision means that the seller of such a property retains the "right" to transfer it after he has once sold it, provided the original purchaser has not yet recorded. The government also cites a provision of the Puerto Rico mortgage laws, P.R. Laws Ann. tit. 30, Sec. 2355 (1968), which refers to a party who records his purchase before a prior purchaser as having acquired a "right" from the seller.
 
 
 14
 We cannot accept the government's reasoning. The Puerto Rico recording statute, like other so-called "race-notice" statutes, is designed to protect good faith purchasers who deal with sellers of property in reliance on public records of property ownership. Unless the statutes provide otherwise, they should not be presumed to give any "right" to a vendor to convey the same piece of property to two purchasers. The government's argument amounts to asking that we construe the term "right to property" in section 6321 as referring to the possibility that the seller might fraudulently convey the sold property to an innocent third party. We cannot accept that Congress intended the term "right" to include the possibility that a party might engage in fraud. Under the Puerto Rico statutory scheme, a taxpayer, once having sold his property, no longer has a "right" to that property within the meaning of section 6321.
 
 
 15
 To be sure, the Fifth Circuit has reached a different conclusion interpreting a Texas statute. See Prewitt v. United States, 792 F.2d 1353 (5th Cir.1986); United States v. Creamer Industries, 349 F.2d 625 (5th Cir.1965), cert. denied, 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965). Whatever the merits of those decisions,[2] they were decided under a Texas statute whose wording and emphasis differs from the relevant Puerto Rico statutes. The Texas statute, cited in Creamer Industries, explicitly states that an unrecorded sale "shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice." Creamer Industries, 349 F.2d at 628 (emphasis added). The Puerto Rico statute, by contrast, is not phrased in terms of the validity of the transaction or the rights of creditors but in terms of the protection afforded a good faith purchaser.[3] Moreover, Puerto Rico law provides that a "sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered." P.R. Laws Ann. tit. 31, Sec. 3746 (emphasis added). Under this provision, a vendor is bound by the sale of his property, regardless of the recording of that sale by the purchaser. He, therefore, has no "right to property" under 26 U.S.C. Sec. 6321.
 
 
 16
 We, therefore, affirm the district court's ruling that the property was not subject to a lien based on the August, 1980, tax assessments against V & E.[4]
 
 III. THE BERRIOS' APPEAL
 
 17
 The Berrios appeal from the district court's ruling that the government had a valid lien on the property for the assessments made prior to May 2, 1980. The Berrios' purchase of the property in May, 1980, came after the first series of assessments but before the filing of a notice of a lien. Their claim is based on the provisions of 26 U.S.C. Sec. 6323(a), which requires the filing of a notice of a tax lien before the lien can be valid against certain parties.
 
 Section 6323(a) states:
 
 18
 (a) Purchases, holders of security interests, mechanic's lienors, and judgment lien creditors.--The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.
 
 
 19
 The Berrios claim that they are entitled to the protection granted "purchasers" by this provision.
 
 
 20
 Section 6323(a) must be read together with subsection (h)(6) which provides a specific definition of "purchaser" for the purposes of the statute:
 
 
 21
 (6) Purchaser.--The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.... [Emphasis added.]
 
 
 22
 The relevant "local law" is stated in P.R. Laws Ann. tit. 31, Sec. 3822:
 
 Sec. 3822. Sale to different vendees
 
 23
 If the same thing should have been sold to different vendees, the ownership shall be transferred to the person who may have first taken possession thereof in good faith, if it should be personal property.
 
 
 24
 Should it be real property, it shall belong to the person acquiring it who first recorded it in the registry.
 
 
 25
 Should there be no entry, the property shall belong to the person who first took possession of it in good faith, and, in the absence thereof, to the person who presents the oldest title, provided there is good faith.
 
 
 26
 According to section 3822, then, the Berrios would not have prevailed against all hypothetical subsequent purchasers without actual notice. If there had been a subsequent purchaser who recorded between May, 1980, and April, 1982, he would have been the owner of the property. The Berrios contend, however, that section 6323(h)(6) does not require that the party be able to prevail against all hypothetical subsequent purchasers. They claim that a "purchaser" need only be the valid owner of the property in the particular circumstances of the case. The Berrios validly bought the property from V & E; there were no other purchasers, recorded or otherwise. The Berrios contend that the fact they were the only legitimate owners of the property after May 2, 1980, suffices to bring them within the protection of section 6323. The provisions of the second paragraph of P.R. Laws Ann. tit. 31, Sec. 3822, they argue, are irrelevant.
 
 
 27
 We reject the Berrios' interpretation of the statute. The statute speaks in general terms of an interest "valid under local law against subsequent purchasers without actual notice." The simplest interpretation of this phrase, as well as the interpretation most consistent with the usage of such phrases in property law, is that the interest must be able to prevail against all hypothetical subsequent purchasers. To be sure, the Berrios' interpretation of "subsequent purchasers" as referring only to actual purchasers does not literally contradict the wording of the section; it does, however, greatly strain its language. Under the Berrios' interpretation, the "validity under local law" of the transaction would be an issue distinct from the party's actual ability to prevail over subsequent purchasers who may or may not exist. The statute, however, speaks of the "validity" of the purchase only in terms of its validity against subsequent purchasers. The statute does not discuss the case of a purchase "valid" in fact in a particular situation. If the Berrios were right that Congress intended to protect such purchases against unfiled tax liens, the pertinent clause would have been worded in a manner such as the following: "an interest in property which is valid under local law and which in fact prevails over subsequent purchasers, if any." By referring to "subsequent purchasers without actual notice," however, the statute clearly refers to an interest able to prevail against any hypothetical subsequent purchaser without notice.
 
 
 28
 The Berrios make a related argument based on 26 U.S.C. Sec. 6323(a). They contend that the notice requirement means that a tax lien does not exist until notice is filed. They claim that at the time of the notice there was no "property or right to property" to which the lien could attach because V & E had already sold the property to the Berrios.
 
 
 29
 We reject this argument. 26 U.S.C. Sec. 6322 provides that "[u]nless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made...." Section 6323 operates as an exception to this general rule, providing protection to specifically designated classes of parties. The tax liens against the property arose in September, 1978, June, 1979, and October, 1979. The liens would not have been effective as to the Berrios only if they had been purchasers within the meaning of section 6323(h)(6).[5] Since we have found that the Berrios do not fall within such definition of "purchasers," we view the tax liens as having arisen prior to the sale of the property by V & E. We agree with the district court that the tax liens based on assessments prior to May 2, 1980, were valid.
 
 IV. THE BANK'S APPEAL
 
 30
 The bank appeals on the grounds that its mortgage interest in the property, albeit unrecorded, was protected against an unfiled tax lien by 26 U.S.C. Sec. 6323(a). Section 6323(a) states that a tax lien is not valid against a "holder of a security interest" until notice of the lien has been filed. Subsection (h)(1) defines the term "security interest" for the purposes of the statute:
 
 
 31
 (1) Security interest.--The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth. [Emphasis added.]
 
 
 32
 The bank argues that, under Puerto Rico law, an unrecorded mortgage is protected against "a subsequent judgment lien arising out of an unsecured obligation." The bank cites Rodriguez v. Solevillas & Co., 49 P.R.R. 618 (1936), and Hidalgo v. Garcia de la Torre, 4 P.R.R. 64 (1903), in support of its contention. The bank acknowledges that the United States District Court for the District of Puerto Rico ruled, in United Federal Savings and Loan Association of Puerto Rico v. Nones, 283 F.Supp. 638 (D.P.R.1968), that cases such as Rodriguez and Hidalgo were reversed by the decision in Ramos Mimoso v. Superior Court of Puerto Rico, 93 P.R.R. 538 (1966). The Nones court declared that, under P.R. Laws Ann. tit. 30, Sec. 5042, "recording of the mortgage is an essential requirement of its constitution." 283 F.Supp. at 639. The court also found persuasive support in decisions of the Supreme Courts of Cuba and Spain interpreting similar provisions. See id. The bank disputes the Nones interpretation of Ramos Mimoso, as well as the Nones analysis of the decision of the Supreme Court of Spain. The bank also cites scholarly articles in support of its criticism of the Nones decision.
 
 
 33
 We need not enter into this complex legal area, however, because we find that the bank's default in the district court precludes it from making this argument before us. A party who seeks to set aside a default judgment must show both that there was good cause for the default and that it has a meritorious defense to the action. See, e.g., Taylor v. Boston and Taunton Transportation Co., 720 F.2d 731, 733 (1st Cir.1983).
 
 
 34
 The bank has not shown good cause for its default. The government instituted this suit in January, 1985. Default was entered against the bank on May 21, 1986. The bank's first response to any of the proceedings before the district court was its motion of August 7, 1986, requesting that the entry of default be vacated and that summary judgment be granted for the bank. The bank's only attempted justification for its delay was its alleged belief that it had similar defenses to those asserted by the Berrios. This claim, however, is belied by the bank's actual arguments on appeal. Those arguments involve statutes relating solely to mortgages, as well as much legal precedent and scholarly comment on the subject.
 
 
 35
 The bank argues, nonetheless, that a defaulting party has the right to contest errors of law made by the district court when the material facts are undisputed. The principle urged by the bank appears to be derived ultimately from a ruling laid down long ago by the Supreme Court: "The judgment, having been rendered on default upon a declaration setting forth no cause of action, may be reversed on writ of error." Cragin v. Lovell, 109 U.S. 194, 199, 3 S.Ct. 132, 134, 27 L.Ed. 903 (1883) (citations omitted). The Court found in that case that it was "clear that the judgment at law [was] erroneous." Id. at 198, 3 S.Ct. at 134. See also Thomson v. Wooster, 114 U.S. 104, 113, 5 S.Ct. 788, 792, 29 L.Ed. 105 (1885). At least two courts have more recently held that a defaulting party may appeal on the grounds that the claims presented were not well-pleaded or that the complaint was insufficient to support the judgment. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir.1978); Nishimatsu Construction Co. v. Houston National Bank, 515 F.2d 1200, 1206 (5th Cir.1975).
 
 
 36
 Whatever the continued vitality of the principles articulated by the Court in Cragin and Thomson, we would not find them applicable here. The bank does not contest the pleadings in the ordinary sense that the facts alleged do not state a cause of action even if accepted as true. The government's complaint clearly stated a cause of action based on precedent, the Nones decision, 283 F.Supp. 638, decided in the same district in which the complaint was brought. The bank seeks to reverse district precedent based on an argument presented for the first time before the district court on a motion to vacate the entry of default. Aside from the complexities of its conceptual discussion, this argument relies on a maze of legal precedent, involving conflicting decisions of the Puerto Rico courts, the federal courts, and decisions from other national jurisdictions, not to mention scholarly debate. We do not view this as a claim about the sufficiency of the pleadings; nor could the district court possibly be viewed as having committed the kind of clear legal error found by the Supreme Court in Cragin or that we have required to justify setting aside a default judgment. See Taylor v. Boston and Taunton Transportation Co., 720 F.2d at 732; American & Foreign Insurance Association v. Commercial Insurance Co., 575 F.2d 980, 982 (1st Cir.1978). We, therefore, affirm the default judgment against the bank.
 
 
 37
 Affirmed.
 
 
 38
 Costs awarded to the United States against the bank.
 
 
 39
 Costs awarded to Berrios against the United States.
 
 
 
 *
 Of the District of Rhode Island, sitting by designation
 
 
 [1]
 The property is described in the district court opinion, in Spanish. See 635 F.Supp. at 155
 
 
 [2]
 See the dissent by Judge John R. Brown in Creamer Industries, 349 F.2d at 629, and the concurrence by Judge E. Grady Jolly in Prewitt, 792 F.2d at 1359
 
 
 [3]
 P.R. Laws Ann. tit. 31, Sec. 3822 states in pertinent part:
 Should there be no entry, the property shall belong to the person who first took possession of it in good faith, and, in the absence thereof, to the person who presents the oldest title, provided there is good faith.
 
 
 [4]
 The parties have argued the relevance of the doctrine of "choateness" to this case. Because we find that Sec. 6323 adequately resolves the issues here, we need not enter into a discussion of that doctrine. See Rodriguez v. Escambron Development Corp., 740 F.2d 92, 97 & n. 7 (1st Cir.1984) (choateness doctrine remains a consideration only where Congress has not provided specific protections as it has in Sec. 6323)
 
 
 [5]
 Section 6323(h)(6) defines "purchaser" thus:
 (6) Purchaser.--The term "purchaser" means a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.... [Emphasis added].