942 F.2d 792
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Djamshid MAHBAN, aka Alexander Mahban, Plaintiff-Appellee,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 89-16113.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 14, 1990.
Decided Aug. 22, 1991.
 
 Before HUG, BEEZER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellee Djamshid Mahban ("Mahban") filed this wrongful levy action against the United States under 26 U.S.C. § 7426. The district court, after a bench trial, ordered the lien on the subject property released and enjoined the Internal Revenue Service from selling the property. The government has appealed. We have jurisdiction under 28 U.S.C. § 1291. We reverse.
 
 I.
 Facts and Proceedings
 
 3
 On March 6, 1978, Mahban acquired title to a Las Vegas residence ("the Property"), the subject of this action. Mahban assumed a loan, secured by a first deed of trust in the amount of $70,000. In 1979, Mahban and Stephanie Matthews ("Matthews") entered into an apparently oral "tentative arrangement whereby she moved into the home and assumed responsibility for the payment of the notes against the home." On January 11, 1981, a written contract of sale was signed by Mahban and Matthews. The contract stated that Matthews would assume the mortgage and that Matthews would pay Mahban $40,000 following the sale of certain property in New York. A quitclaim deed, dated January 12, 1981, transferring the Property to Matthews was recorded in the Clark County, Nevada, Recorder's Office on January 13, 1981. On January 17, 1981, Matthews executed a promissory note payable to Mahban in the amount of $40,000 upon the sale of the Property. The note stated that it was secured by a deed of trust. However, no deed of trust was ever signed by the parties or recorded. Matthews occupied the Property and paid $1,350 each month to Mahban. A portion of each payment was to discharge the first deed of trust on the Property.
 
 
 4
 Between April 26, 1982, and March 29, 1983, the Internal Revenue Service ("IRS") made income tax assessments against Richard Kirkland ("the taxpayer") after he pled guilty to tax evasion. It is not disputed that Matthews was a nominee of the taxpayer.[1]
 
 
 5
 On April 18, 1984, Matthews filed a petition in bankruptcy. The petition listed the Property as an asset subject to a claim estimated at $70,000 and listing Mahban as the secured creditor. In May, 1984, the bankruptcy petition was amended by deleting the Property as an asset of Matthews and the debt to Mahban as a liability.[2] The district court found that "[i]n the bankruptcy proceedings, the house was returned to Mahban in exchange for the discharge of the $40,000 note." However, the return was apparently not accompanied by a deed or other writing and no change in title was recorded in the Clark County Recorder's Office.[3] Mahban took possession of the Property in the summer of 1984 and on November 2, 1984, executed a deed of trust on the Property as security for a bond.
 
 
 6
 On November 29, 1984, a notice of federal tax lien was filed with the Clark County Recorder. The notice listed Matthews as agent, nominee, or trustee for the taxpayer and specified the Property as subject of the lien.
 
 
 7
 In April, 1986, Mahban filed a quiet title action in Nevada state court naming Matthews as a defendant. The United States was not named as a party. A judgment quieting title in Mahban was entered on September 26, 1986. The district court found, and Mahban does not dispute, that the quiet title judgment was not binding on the government.
 
 
 8
 On October 22, 1986, the government levied on the Property. Mahban then filed a complaint claiming damages for the wrongfully levy on his Property and seeking to enjoin the government from selling the Property.
 
 
 9
 The government contended at trial that the tax lien was valid because it was recorded while Matthews was the record owner of the Property. The government further argued that this valid lien was not extinguished by Mahban's subsequent quiet title action because the United States was not made a party to that action. The government did not rely, as it does on appeal, on Sections 6321-23 of the Internal Revenue Code nor argue that the government's lien arose at the time of the tax assessments. The district court found that
 
 
 10
 [e]ven though Mahban was not the record title owner of the property at the time of the IRS lien, he was clearly the legal and equitable owner of the property. The interest of [the taxpayer] and Matthews was extinguished in the summer of 1984 when Mahban reacquired the property through the bankruptcy proceedings....
 
 
 11
 ....
 
 
 12
 The record is clear that [the taxpayer] and Matthews had no lawful interest or right to the real property at the time the IRS filed its lien.
 
 
 13
 The district court ordered the lien released and enjoined the government from selling the Property. The government has appealed.
 
 II.
 Discussion
 
 14
 A. Arguments Raised for the First Time on Appeal.
 
 
 15
 The thrust of the government's argument on appeal is that the tax lien arose on the date of the tax assessment against the taxpayer, and not at the time the notice of tax lien was recorded.[4] On the date of the tax assessments, the government argues, regardless of any later transactions during or after Matthews's bankruptcy proceedings, Matthews was the owner of the Property and the Property was therefore subject to its levy.
 
 
 16
 Mahban argues that he "tried the case on the belief that whatever rights the Government acquired to the property in question were not acquired until it recorded its lien.... It is apparent that both the Government and the trial court treated the matter similarly." The record supports Mahban's argument.[5] The attention of the parties and the court during the trial was focused on the date the tax lien was recorded, November 29, 1984. Although the statutory scheme discussed by the government on appeal is clearly relevant and may have produced a different result had it been presented to the trial court, it focuses the direction of our inquiry to the transactions between Matthews and Mahban occurring between 1979 and 1981. The failure of the government to raise Sections 6321-23 and their accompanying factual issues at trial have resulted in an insufficient record to review these issues.[6] We therefore exercise our discretion and decline to address the new theories. See Bolker v. C.I.R., 760 F.2d 1039, 1042 (9th Cir.1985).
 
 
 17
 B. Wrongful Levy.
 
 
 18
 We now consider whether, on the record before us, the district court erred in finding the government wrongfully levied on the Property. The district court's decision was based upon (1) a factual finding that Mahban, and not Matthews, was the legal and equitable owner of the Property at the time the notice of lien was recorded and (2) the legal conclusion that the government's interest in the Property could be no greater than Matthews's. We review factual findings under the clearly erroneous standard, Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990), and legal conclusions de novo. United States v. Moncini, 882 F.2d 401, 403 (9th Cir.1989).
 
 
 19
 The district court found that Matthews released the Property to Mahban in her bankruptcy proceedings, in exchange for cancellation of her promissory note. The evidence of this release is an amendment to Matthews's bankruptcy petition deleting the reference to the Property as an asset and Mahban as a creditor. No deed or writing of any kind reflecting a transfer of the Property, however, was ever executed. Under Nevada law,
 
 
 20
 [n]o estate or interest in lands ... shall be created, granted, assigned, surrendered or declared ... unless by act or operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized in writing.
 
 
 21
 Nev.Rev.Stat. § 111.205 (Michie 1986) (emphasis added). Because there is no evidence of any deed or conveyance in writing from Matthews to Mahban, the district court's reliance on the bankruptcy proceedings was clearly erroneous.[7] The district court also relied on the facts that Mahban took possession of the Property after Matthews "release" of the Property, and that Mahban subsequently executed a deed of trust on the Property. Possession, however, unless it is sufficient to create title by adverse possession, does not give rise to legal ownership. Id. Neither does the execution of a deed of trust.
 
 
 22
 Even if Mahban had acquired an interest in the property from Matthews in 1986, it was not protected from a government tax lien. The court reasoned that because Mahban had a superior interest as to Matthews, his interest is also superior as to the I.R.S.[8] Contrary to the district court's belief, however, the validity of the government's lien is governed by statute and is not dependent upon the strength of Matthews's interest in the Property vis-a-vis Mahban. See 26 U.S.C. § 6323 (1988). If Mahban purchased the Property from Matthews in 1984, as the district court believed, his interest would be superior to the government's lien only if his interest would defeat a subsequent purchaser without actual notice under Nevada law. Id. § 6323(h)(6). Because Mahban had no recorded interest in the Property, under Nevada law, whatever interest he may have had would not have been valid against subsequent purchasers without actual notice who record first. See Nev.Rev.Stat. § 111.325 (Michie 1986); United States v. V & E Engineering & Const. Co., Inc., 819 F.2d 331 (1st Cir.1987). Thus, even if the court did not clearly err in finding that Matthews transferred the Property back to Mahban in 1984, this transfer would be insufficient to invalidate the government's lien.
 
 
 23
 Because there is no evidence of any writing transferring the Property from Matthews to Mahban, the district court's finding that Mahban was the legal and equitable owner of the Property is clearly erroneous. Because Matthews was the legal owner of the Property at the time the lien was recorded, the I.R.S.'s lien was not wrongful. Even if Mahban's interest was superior as against Matthews, it would not be superior to the government's lien under 26 U.S.C. § 6323.
 
 Conclusion
 
 24
 The government's arguments regarding the lien arising at the time of the assessment were not raised at, or prior to, trial. Because the factual record regarding the issues these arguments raise is not fully developed the court declines to address them. The district court's conclusion that Mahban had reacquired ownership to the Property during Matthews's bankruptcy proceedings is clearly erroneous. Because Matthews remained the legal owner of the Property at the time the lien was recorded, the lien was not wrongful. Even if Mahban has an interest that could defeat Matthews's interest in the Property, such unrecorded interest would not be protected against the government's lien. Because the district court's decision was based upon clearly erroneous factual findings and incorrect legal conclusions, the judgment is reversed.
 
 
 25
 REVERSED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The district court found that the taxpayer "purchased the property and utilized Stephanie Matthews in an attempt to conceal his income." This finding is not contested by Mahban on appeal
 
 
 [2]
 The bankruptcy petition was ultimately dismissed
 
 
 [3]
 Mahban's attorney explained to the trial court that Mahban "was attempting to get her to sign off on the property, but [he] had difficulties. And finally she did sign off on something, but not before a notary." Even if Matthews did sign "something," no such writing is in the record of this case
 
 
 [4]
 The government's argument is supported by 26 U.S.C. § 6322 which provides that "[u]nless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made."
 
 
 [5]
 The pretrial order, for example, states, "[t]he United States claims an interest in the property pursuant to a Notice of Federal Tax Lien filed on November 29, 1984."
 
 
 [6]
 The government argues that "this case presents a clear-cut application of the rules contained in Section 6322 and Section 6323 of the Internal Revenue Code that may be decided on the existing record without developing any additional facts." We disagree. Relevant facts not developed below include whether the quitclaim deed from Mahban to Matthews vested Matthews with legal title and whether Mahban retained a security interest in the property within the meaning of 26 U.S.C. § 6323
 Although the recordation of a quitclaim deed creates a presumption of title in the grantee named in the deed, this presumption is rebuttable. See Nev.Rev.Stat. § 111.340 (Michie 1986) ("Neither ... the proof of any conveyance or instrument, nor the record ... of such conveyance or instrument, shall be conclusive, but the same may be rebutted."); see also Picetti v. Orcio, 57 Nev. 65, 67 P.2d 315, 317 (1937) (presumption may be overcome by "clear, cogent, and convincing" evidence).
 Contrary to the government's argument on appeal, Mahban may have had a security interest in the Property notwithstanding the absence of a recorded deed of trust. Even though a document labeled "deed of trust" was not signed or recorded, this does not preclude the creation of a security interest in the property enforceable against Matthews. See Nee v. Smith, 97 Nev. 42, 47-48, 624 P.2d 4, 7 (1981) ("If the parties intend to create a mortgage, no particular form of instrument or words is necessary to create an equitable mortgage."). If a security interest is found, it may also have been protected against subsequent judgment lienors under Nevada law. See Sturgill v. Industrial Painting Corp. of Nevada, 82 Nev. 61, 410 P.2d 759, 761 (1966) ("[A] judgment creditor is not within the class designated by the recording statute for protection against an unrecorded conveyance. NRS 111.320 and 111.325 protect subsequent purchasers and mortgagees and make no reference to creditors.") (emphasis in original).
 
 
 [7]
 Mahban's interest in the property, though not created by deed or conveyance, was created by "operation of law" when the Nevada state court granted judgment in his favor in his quiet title action. This judgment, however, was not entered until September, 1986, after the government's tax lien was recorded
 
 
 [8]
 The court stated that the I.R.S. "is only stepping into the shoes of the nominee at the time that that lien attaches. And all you do is acquire whatever interest ... [the taxpayer] had at that point. And [the taxpayer] really had no interest in that property at that point."