Mary Joyce THOMSON,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 94–3861.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1995.

Decided Sept. 19, 1995.

Jay B. Kelly, argued, St. Paul, MN, for appellant.

William Estabrook, Department of Justice, argued, Washington, DC, for appellee.

Before McMILLIAN, LAY and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

In 1971, Douglas and Mary Thomson divorced. The divorce decree awarded Mary "exclusive use, ownership and possession" of their home, which they were purchasing under a contract for deed. The divorce decree was unrecorded when the Internal Revenue Service obtained a lien on all of Douglas's property rights under 26 U.S.C. § 6321. The IRS levied on the home, and Mary commenced this wrongful levy action under 26 U.S.C. § 7426, claiming that she owns the home. After a bench trial, the district court held that the IRS prevails over Mary's unrecorded ownership interest under the Minnesota recording act. We conclude that that act gives Douglas no property right in the home to which the government's lien may attach. We therefore reverse and remand.

The 1971 divorce decree provided that Douglas would "execute all necessary documents to effectively vest ownership in [Mary] and upon failure to do so such ownership shall vest in [Mary] by this Decree." Mary continued to reside in the St. Paul home, while Douglas made payments on the contract for deed. In 1982, Douglas and Mary mortgaged the vendees' interest in the property to Douglas's brother as security for a $140,000 loan to Douglas. The following year, Douglas again mortgaged the property, this time without Mary's knowledge, as security for a bank loan. Both mortgages were recorded. In 1985, the contract-for-deed vendors executed a warranty deed conveying the property to "Douglas W. Thomson and Mary J. Thomson ... as joint tenants." That deed was not recorded. Mary resided at the home until 1988, when she moved elsewhere for two years and Douglas lived in the home with their sons. Douglas listed the property as his home on a March 1992 Collection Information Statement submitted to the IRS, stating that he had a "joint tenant" interest.

On May 20, 1991, the IRS assessed Douglas $179,752 in unpaid 1990 income tax, thereby creating a lien on all his property under 26 U.S.C. § 6321:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

On October 8, 1992, IRS levied on the home in order to seize Douglas's apparent one-half interest. The next day, Douglas recorded the divorce decree. Mary then commenced this action to set aside the levy.

■ In applying § 6321, the taxpayer's "rights to property" are determined under state law. *See Aquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–1281, 4 L.Ed.2d 1365 (1960); *Herndon v. United States*, 501 F.2d 1219, 1220 (8th Cir. 1974). The district court concluded that the IRS stands in the shoes of a judgment creditor without notice, and that its lien prevails over Mary's unrecorded ownership interest under Minnesota's recording statute, Minn. Stat. § 507.34.

■ 1. Our basic problem with the district court's analysis is its assumption that the IRS as lienholder stands in the shoes of the taxpayer's judgment creditors. We have little doubt that Congress could clothe a government tax lien with the rights and powers of a hypothetical bona fide purchaser or judgment creditor. But the question is

whether the statute does so when it provides that a person's unpaid taxes "shall be a lien in favor of the United States upon all property and rights to property ... *belonging to such person.*" 26 U.S.C. § 6321 (emphasis added). The plain meaning of the words "belonging to" suggests that the lien attaches to property interests owned by the taxpayer, not property interests vulnerable to the taxpayer's judgment creditors. As every bankruptcy trustee knows, the latter is a potentially larger universe. *See, e.g., In re Forbrook Constr., Inc.,* 474 F.Supp. 876 (D.Minn. 1979).[1]

The Supreme Court has adopted this plain language approach in construing § 6321: "The .Federal statute relates to the taxpayer's rights to property and not to his creditors' rights." *United States v. National Bank of Commerce,* 472 U.S. 713, 727, 105 S.Ct. 2919, 2927, 86 L.Ed.2d 565 (1985); *accord, United States v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 2140–2141, 76 L.Ed.2d 236 (1983). This court and other circuits have as well: "The IRS acquires by its lien and levy no greater right to property than the taxpayer himself has at the time the tax lien arises." *St. Louis Union Trust Co. v. United States,* 617 F.2d 1293, 1301 (8th Cir.1980). *See also Gardner v. United States,* 34 F.3d 985 (10th Cir.1994) ("the tax collector not only steps into the taxpayer's shoes but must go barefoot if the shoes wear out," *quoting* 4 Boris Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 111.5.4 (1981)); *Avco Delta Corp. Canada Ltd. v. United States,* 459 F.2d 436, 441 (7th Cir. 1972) ("the government's lien does not exceed the rights of the taxpayer").

Mary squarely raises this issue on appeal, arguing that the divorce decree divested Douglas of all interest in the property. The government would have us ignore the statute's text, relying on lower court decisions that simply assumed that, as lienholder, IRS stands in the shoes of the taxpayer's judgment creditors. These cases paid little if any attention to the statute's plain meaning as construed by the Supreme Court, but they

were factually more similar to this case than *National Bank of Commerce* and *St. Louis Union Trust.* Thus, we must consider whether it is appropriate to apply the statute's literal language to the facts of this case.

The two cases on which the government most heavily relies are *United States v. Creamer Indus., Inc.,* 349 F.2d 625 (5th Cir.), *cert. denied,* 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965), and *Prewitt v. United States,* 792 F.2d 1353 (5th Cir.1986). In those cases, divided Fifth Circuit panels, applying Texas law, held that the § 6321 tax lien attached to properties that the taxpayers had previously conveyed by unrecorded instruments. "As to the taxes owed to it," the court explained in *Creamer,* "the United States was a 'creditor' within the Texas recording statute." 349 F.2d at 628. In dissent, Judge Brown construed § 6321 more narrowly, much like the later *National Bank of Commerce* decision: "Unless there is property belonging to the taxpayer, the Government's lien is nonexistent.... [T]he one thing clear is that Taxpayer here had *no* right in or to the property." *Id.* at 629. In *Prewitt,* the Fifth Circuit followed *Creamer* without discussing *National Bank of Commerce,* permitting the § 6321 lien to defeat an unrecorded divorce decree. Judge Jolly concurred but stated that he agreed with Judge Brown's dissent in *Creamer.* 792 F.2d at 1353.

Applying the law of Puerto Rico, the First Circuit rejected the reasoning of *Creamer* and *Prewitt* in *United States v. V & E Eng'g & Constr. Co.,* 819 F.2d 331 (1st Cir.1987). The court held that the § 6321 lien did not attach to property the taxpayer had previously conveyed by an unrecorded deed of sale, concluding that "a taxpayer, once having sold his property, no longer has a 'right' to that property within the meaning of section 6321." *Id.* at 333. Similarly, applying the law of Connecticut, the court in *Hamilton v. United States,* 806 F.Supp. 326 (D.Conn.1992), followed *V & E* and rejected *Creamer* and *Prewitt.* The court explained that the taxpayer's prior unrecorded convey-

---

1. We are concerned in this case with whether the § 6321 lien attached to particular property. Once the lien attaches, its validity and priority are questions of federal law that Congress has addressed in great detail. *See* 26 U.S.C. § 6323.

ance sold the taxpayer's entire interest. Therefore, the IRS "would have this Court effectively sanction the knowing sale by a vendor of the same piece of property to two purchasers.... The Court is hard pressed to believe Congress would countenance this result." *Id.* at 333.

We conclude that *V & E* and *Hamilton* are more consistent with the language of § 6321 and the rule of *National Bank of Commerce* than are *Creamer* and *Prewitt.* The IRS has many collection remedies in the Internal Revenue Code; proceeding by lien and administrative levy is the most summary and severe of those remedies. *See Rodgers,* 461 U.S. at 695–96, 103 S.Ct. at 2143–44. Congress had good reason to limit this remedy to property rights "belonging to" the taxpayer.[2]

■ 2. We must next examine the district court's reliance on Minnesota's recording statute in light of our conclusion that the § 6321 lien may only attach to property rights "belonging to" Douglas. Some recording statutes, like the one at issue in *United States v. Hole,* No. 75–1770–MA, 1980 WL 1555 (D.Mass. Mar. 31, 1980), provide that a conveyance has no effect "in passing title" until recorded. Under that type of statute, the transferor seemingly retains an interest to which the § 6321 lien may attach. On the other hand, if a State's recording act only makes an unrecorded transfer void or voidable as against subsequent judgment creditors or bona fide purchasers, the transferor retains no post-transfer interest.

Minnesota's statute is clearly of the latter variety. It provides that an unrecorded conveyance

shall be void as against any subsequent purchaser ... whose conveyance is first duly recorded, and as against ... any judgment lawfully obtained ... against the person in whose name the title to such land appears of record prior to the recording of such conveyance.

Minn.Stat. § 507.34. This statute protects only subsequent bona fide purchasers and judgment creditors, essentially those "who buy real estate in reliance upon the record." *Miller v. Hennen,* 438 N.W.2d 366, 369 (Minn.1989). It does not vest any property interest in Douglas, the transferor. Moreover, we note that Douglas was not "the person in whose name the title to such land appears of record" because his contract-for-deed interest was never recorded. Thus, the recording act does not give Douglas any property right to which the § 6321 lien may attach.

■ 3. Douglas transferred his unrecorded equitable interest in the property to Mary by the 1971 divorce decree. *See* Minn. R.Civ.P. 70. With the recording act out of the picture, the question becomes whether Douglas has any other interest to which the § 6321 lien may attach under Minnesota law. If not, the divorce decree effectively leaves the IRS unshod and Mary is entitled to set aside its levy. *See Farmers' & Merchants' State Bank v. Stageberg,* 161 Minn. 413, 201 N.W. 612 (1925).

In 1985, when the contract for deed was finally paid, the record owners conveyed the property to Douglas and Mary by a warranty deed purporting to give Douglas a joint tenant's interest. Thereafter, the Thomsons took many actions consistent with this deed, including Douglas's representation on his

---

**2.** There is an apparent exception to the general rule of *National Bank of Commerce*—taxpayer fraudulent conveyances. Under state law, such conveyances are typically void "as against" subsequent bona fide purchasers or creditors, without regard to whether the defrauding transferor has a residual interest in the property. *See, e.g.,* Minn.Stat. §§ 513.08, 513.44–.45. Yet a number of cases have held that the § 6321 lien attached to property conveyed by the taxpayer with the intent to defraud creditors, treating the IRS as a defrauded creditor without considering whether that is the proper focus given the language of § 6321 as construed in *National Bank of Commerce. See United States v. Fernon,* 640 F.2d

609, 612 & n. 5 (5th Cir.1981); *United States v. Jones,* 631 F.Supp. 57, 59 (W.D.Mo.1986). The contrast between the government's uniform success in fraudulent conveyance cases and the plain language of § 6321 as construed in *National Bank of Commerce* is somewhat troubling. Perhaps a special rule is appropriate in cases of fraud. Or perhaps the lien issue is unimportant because the IRS is in any event a creditor entitled to pursue its remedies under these fraudulent conveyance statutes. *See United States v. Bierbrauer,* 936 F.2d 373 (8th Cir.1991). As there is no suggestion of taxpayer fraud in this case, we need not resolve this question.

1992 IRS Collection Information Statement that he owns a joint tenant's interest. These actions raise at least two pertinent questions: (1) whether, in light of the 1971 divorce decree reflecting Douglas's conveyance to Mary, the 1985 warranty deed established an interest in the property "belonging to" Douglas to which the § 6321 lien may attach under Minnesota law; and (2) if Douglas does own such an interest, whether the nature and extent of Mary's interest in the property nonetheless renders the IRS levy wrongful. *See Hill v. United States,* 844 F.Supp. 263, 274–75 (W.D.N.C.1993). These are fact intensive questions that the district court should determine in the first instance. We note in this regard that the parties' respective burdens of proof may raise important and unresolved issues on remand. *Compare Valley Finance, Inc. v. United States,* 629 F.2d 162, 171 n. 19 (D.C.Cir.1980), *with Flores v. United States,* 551 F.2d 1169, 1176 n. 8 (9th Cir.1977).

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.