**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David GIBBONS, Defendant,**

**and**

**Betty J. Gibbons, Defendant–Appellant.**

**No. 94–1330.**

United States Court of Appeals, Tenth Circuit.

Dec. 1, 1995.

---

Fred M. Hamel, Denver, Colorado, for Defendant–Appellant Betty J. Gibbons.

Robert W. Metzler, Attorney, Tax Division (Loretta C. Argrett, Assistant Attorney General, and William S. Estabrook, Attorney, Tax Division; of counsel: Henry Lawrence Solano, United States Attorney, with him on the brief), Department of Justice, Washington, D.C., for Plaintiff–Appellee.

Before HENRY and LOGAN, Circuit Judges, and ELLISON, District Judge.*

LOGAN, Circuit Judge.

This case involves a dispute between the United States Internal Revenue Service (IRS) and Betty J. Gibbons, the ex-wife of taxpayer David Gibbons. The IRS brought suit pursuant to I.R.C. §§ 7401–7403, to reduce to judgment federal tax assessments against David Gibbons and to foreclose federal tax liens against real property in which he held an interest. The district court found that despite a dissolution of marriage decree awarding Betty Gibbons the conditional right to live on the property during her life, David and Betty continued to own the property as joint tenants. Thus, it held she was entitled to only one-half of the proceeds of the foreclosure sale. Betty Gibbons appeals.

I

In 1970, Betty and David Gibbons acquired title to real property in Denver, Colorado (Ogden Street property) "in joint tenancy." Appellant's App. 10, 40. They were divorced in January 1982. The dissolution decree incorporated a separation agreement that provided in relevant part

House at 325 So. Ogden held in Joint Tenancy to be occupied by Betty J. Gibbons and three minor children, and mortgage paid monthly by Betty J. Gibbons. If Betty J. Gibbons remarries and/or moves from said house, house is to be sold and equity divided equally between David J. Gibbons and Betty J. Gibbons.

Id. at 43.

Between 1984 and 1990 the IRS filed notices of federal tax liens[1] against David for nonpayment of taxes. In June 1992 the IRS filed this suit seeking to reduce to judgment federal tax assessments against David and to foreclose the tax liens against the Ogden Street property. Betty evidently neither contested the IRS' right to seek sale of the entire property nor asked the district court to exercise its discretion to decline to order a foreclosure sale.[2] She argued, however, that the separation agreement conveyed to her a life estate interest in the property for which she was entitled to be compensated. The district court rejected Betty's position; it determined that David and Betty continued to hold the Ogden Street property in joint tenancy and that Betty was entitled to only one-half of the proceeds of the forced sale.

■ The threshold question before us is whether, under Colorado law, the separation agreement severed the joint tenancy and conveyed to Betty a new interest in the Ogden Street property. If we find that it did then we must address whether (based on Colorado recording statutes) her failure to record her interest where deeds are registered rendered it invalid as against the recorded tax liens. Finally, if we find that Betty's interest was valid against the IRS liens, we must determine whether a stipulation of the parties is determinative of the value of her additional interest. We review de novo the district court's interpretation of both federal and Colorado law. See Salve Regina College v. Russell, 499 U.S. 225, 231,

---

* The Honorable James O. Ellison, Senior United States District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

1. Notices were recorded in 1984, 1988, and 1990. The total amount of the liens which attached to David Gibbons' interest in the Ogden Street property was $42,066.28.

2. In December 1992 Betty Gibbons filed a counterclaim against the IRS. In March 1994 the district court entered a judgment dismissing the counterclaim. Betty Gibbons did not appeal dismissal of the counterclaim. The IRS obtained a default judgment against David Gibbons, who did not appear at trial and has not appealed from the district court's judgment against him.

111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

## II

The district court based its determination that the separation agreement did not create a new interest in the property in part upon cases addressing the requirement for delivery of a deed to convey property. These cases, however, addressed whether or not there was actual delivery and acceptance of a deed sufficient to pass title. *See, e.g., Sims v. Sperry,* 835 P.2d 565, 568 (Colo.App. 1992) (when grantor did not intend to unconditionally and presently part with "possession and control or any power over the deed, for the benefit of grantee," delivery of deed did not pass title, even if deed was recorded); *Stagecoach Property Owners Ass'n v. Young's Ranch,* 658 P.2d 1378, 1380–81 (Colo.App.1982) (differentiating between conveyance and dedication for purposes of statute providing for conveyance of park area by subdividers). Property may be passed in many ways other than by deed, including court orders in probate of a decedent's estate and in final termination of marriages such as the one before us. *See, e.g., Baker v. Baker,* 667 P.2d 767, 769 (Colo.App.1983) (separation agreement, made part of divorce decree, granted wife life tenancy or leasehold estate). Rule 70 of the Colorado Rules of Civil Procedure provides that "the court ... may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law."

Betty Gibbons asserts that the separation agreement conveyed to her a life estate interest and destroyed the joint tenancy in the Ogden Street property. Colorado has adopted the modern test for determining whether a joint tenancy has been destroyed. That test "focuses on the intent of the parties with regard to the right of survivorship characteristic." *Mangus v. Miller,* 35 Colo.App. 115, 532 P.2d 368, 369 (1974). Two Colorado cases are instructive on this point.

In *Bradley v. Mann,* 34 Colo.App. 135, 525 P.2d 492 (1974), *aff'd,* 188 Colo. 392, 535 P.2d 213 (Colo.1975) (en banc), a separation agreement provided that a residence would "remain in the joint names of the parties and the party residing therein shall pay all current expenses." *Id.* 525 P.2d at 493. The agreement further provided that the property would be sold upon the remarriage of the wife, the youngest child reaching age twenty-one, or by mutual agreement, whichever came first, with the proceeds to be divided equally between the parties. The Colorado Court of Appeals, while acknowledging that obtaining a divorce by itself is not an indication of intent to terminate joint tenancy ownership, nevertheless held the joint tenancy no longer existed. It stated that the provision for ultimate sale of the property and division of the proceeds indicated that "neither party had the ultimate expectation of receiving the other's interest in the property upon that party's death, and the ownership of the property was thereby converted to a tenancy in common." *Id.* 525 P.2d at 494.

In *Mangus v. Miller,* the Colorado Court of Appeals addressed whether a separation agreement that provided for a five-year lease to one of the parties and an option to purchase a half interest in the premises terminated a joint tenancy. The court stated that because each party had voluntarily surrendered some of their rights, they had terminated the joint tenancy. The court held that "[t]he right of either party to insist upon a sale to one or the other is wholly inconsistent with the continuance of a joint tenancy relationship." 532 P.2d at 369–70 (citation omitted). The court reasoned that the provisions of the separation agreement were inconsistent with the intent that a surviving ex-spouse should succeed to the deceased spouse's interest.

In the instant case the agreement provided that the Ogden Street property would be sold if Betty Gibbons either remarries or moves out of the home; thus Betty had the unconditional right to force the sale of the property. Under *Mangus,* this right is inconsistent with an intent to continue a joint tenancy. The IRS counters that the phrase "held in Joint Tenancy" in the separation agreement indicates that there was no intent to destroy the joint tenancy. But in *Bradley* the court stated that "[e]ven if the agreement had used the words 'joint tenancy,' we would still be

required to examine the remainder of the agreement to see whether it provided for a disposition which would be inconsistent with the right of survivorship." 525 P.2d at 494 n. 1.[3] Under Colorado law, the separation agreement severed the joint tenancy.

■ The remaining question is to identify what interest the separation agreement conveyed to Betty Gibbons. We think the Colorado law cited above indicates that she has a possessory interest in the whole of the property and a remainder interest in one-half. We are satisfied that the possessory interest is a form of life estate—because it is capable of lasting throughout Betty's lifetime and it is not terminable at any fixed or computable period of time or at the will of ex-husband David. *See Restatement of Property* § 18(b) (1936); *see also Collins v. Shanahan,* 34 Colo.App. 82, 523 P.2d 999, 1003 (1974), *rev'd in part on other grounds,* 189 Colo. 169, 539 P.2d 1261 (1975) (en banc) ("It has been said that a life estate exists if the interest can or may continue during a life."). Betty's interest is qualified by the conditions that she live in the home, pay on the mortgage, and that she not remarry. But these are all conditions within her power to control; her interest does not expire automatically at a fixed date nor is it subject to the will of her ex-husband. *See Baker v. Baker,* 667 P.2d 767, 769 (Colo.App.1983) (separation agreement providing that husband would make premises available to wife if she elected to continue in possession and paid $150 per month in rent described by court as both a life tenancy and a leasehold estate). At common law this estate would be characterized as a life estate determinable. *See Restatement of Property*

§ 23, illus. 1. Whether Betty's interest is characterized a life estate determinable, a defeasible lifetime lease, or something akin to a homestead interest, she has more than a one-half interest in the property.

## III

■ The IRS argues that even if the separation agreement conveyed to Betty Gibbons an additional interest in the Ogden Street property, her failure to record the separation agreement or dissolution decree renders that conveyance invalid as against the IRS lien.[4] The IRS lien was created under I.R.C. § 6321, which provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Under § 6321, the taxpayers' "rights to property" are determined under state law. *See Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–81, 4 L.Ed.2d 1365 (1960); *Gardner v. United States,* 34 F.3d 985, 987 (10th Cir.1994) (in determining whether a federal tax lien attaches we look to state law to determine the nature of the legal interest which the taxpayer had in the property).

The IRS asserts that under Colorado law it is within a "class of persons with any kind of rights who first records," and thus its lien prevails over Betty's unrecorded ownership interest. *See* Colo.Rev.Stat. § 38–35–109.[5]

---

3. Further, as Betty Gibbons pointed out in her brief, the separation agreement stated that the property was *held* in joint tenancy—past tense—and the rest of the clause used the future tense, *i.e.,* "to be occupied" by Betty Gibbons and "is to be sold," thus indicating that the use of "joint tenancy" may have been a reference to the past ownership interest.

4. Apparently neither the separation agreement nor the divorce decree were recorded in the office of the county clerk. We note that the copies in the appendix do contain file stamps that they were recorded in some office in the City and County of Denver. *See* Appellant's App. 41, 43. For purposes of this opinion we presume, as

the district court and the parties do, that whatever recording was done here it was not sufficient to place the documents in the chain of title to the real estate.

5. Colorado Revised Statutes § 38–35–109 provides that:

All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record *may be recorded* in the office of the county clerk and recorder of the county where such real property is situated. *No such unrecorded instrument or document shall be valid as*

The IRS relies on the Fifth Circuit cases of *United States v. Creamer Indus., Inc.,* 349 F.2d 625 (5th Cir.), *cert. denied,* 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361 (1965), and *Prewitt v. United States,* 792 F.2d 1353 (5th Cir.1986). The *Creamer* court determined that the United States was a "creditor" protected under the Texas Recording Act and held that § 6321 tax liens attached to properties that the taxpayers previously had conveyed by unrecorded instruments. *Creamer,* 349 F.2d at 628. In *Prewitt* the Fifth Circuit allowed a § 6321 lien to defeat the interest of the plaintiff who had purchased the property from the former wife of the taxpayer because the divorce decree was unrecorded. *See Prewitt,* 792 F.2d at 1356–57.

The First and Eighth Circuits have rejected the Fifth Circuit view. *United States v. V & E Engineering & Constr. Co.,* 819 F.2d 331 (1st Cir.1987), held that a § 6321 lien did not attach to property that the taxpayer previously had conveyed by an unrecorded deed because once the taxpayer sold his property he did not have a "right" to that property within the meaning of § 6321. *Id.* at 333. Likewise, very recently, the *Thomson v. United States,* 66 F.3d 160, 163 (8th Cir. 1995), court determined that under the Minnesota recording statute, which protects subsequent bona fide purchasers and judgment creditors against unrecorded conveyances, the IRS lien did not defeat the ex-wife's interest even though she had not recorded her interest.

█ The Eighth and First Circuits rely upon the Supreme Court's plain language approach to § 6321: "The federal statute relates to the taxpayer's rights to property and not to his creditors' rights." *United States v. National Bank of Commerce,* 472 U.S. 713, 727, 105 S.Ct. 2919, 2928, 86 L.Ed.2d 565 (1985). In other words, the tax

collector steps into the taxpayer's shoes. *See Gardner v. United States,* 34 F.3d 985, 988 (10th Cir.1994); *see also United States v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 2140–41, 76 L.Ed.2d 236 (1983) ("the Government's lien under § 6321 cannot extend beyond the property interests held by the delinquent taxpayer").

Although the Colorado statute provides that an unrecorded conveyance is void "as against any class of persons with any kind of rights who first records," it also continues— "except between the *parties thereto* and such as have notice thereof." Colo.Rev.Stat. § 38–35–109 (emphasis added). The separation agreement, although unrecorded, prevents David from contesting Betty's ownership of what was conveyed to her.[6] The IRS must stand in the shoes of David Gibbons, who has no "rights to property," I.R.C. § 6321, to which the tax lien could attach in the property interest conveyed to Betty Gibbons. Therefore, the IRS lien against property "belonging to" David does not reach Betty's interest. The IRS stipulated that its tax levy does not reach any interest of Betty Gibbons.

## IV

█ Although the IRS can force the sale of the property against Betty Gibbons' interest, *see Rodgers,* 461 U.S. at 694–96, 103 S.Ct. at 2142–44, the IRS must reimburse her for her fifty percent remainder interest plus the value of her possessory interest that will be ousted by the sale.[7] Betty asserts that the value is controlled by the stipulation of facts between the parties. The stipulation on which she relies provides:

If the Court determines that Ms. Gibbons has a life estate in the real property

---

against any class of persons with any kind of rights who first records, except between the parties thereto and such as have notice thereof. This is a race-notice recording statute. (Emphasis added.)

**6.** As the *Thomson* court pointed out, if a recording statute provides that a conveyance has *no effect* in passing title until recorded, *see, e.g., United States v. Hole,* No. 75–1770–MA, 1980 WL 1555 (D.Mass. Mar. 31, 1980), the transferor (in this case David Gibbons) could be construed to

retain an interest to which a § 6321 lien could attach. *Thomson,* 66 F.3d at 163.

**7.** Because the IRS has the right under *Rodgers* to force a sale of the property against Betty Gibbons' interest her acquiescence to the sale does not mean that she has moved off the property in the sense required to trigger the fifty-fifty allocation between the parties specified in the separation agreement.

in addition to and apart from her 50% ownership interest with Mr. Gibbons, Ms. Gibbons' Exhibit D is the applicable actuarial table for use in valuing the life estate. Pursuant to Exhibit D the value of a life estate for Ms. Gibbons is 82.621%, with the Gibbons each having one-half of the 17.379% remainder, for a total interest for Ms. Gibbons of 91.311% and for Mr. Gibbons of 8.680%.

Appellant's App. 12.

We have determined that Betty does not have an unqualified "life estate"; rather, she has what we characterize as a life estate determinable on the condition that she occupy the home, not remarry, and pay the mortgage payments as due. Thus we do not construe the stipulation as controlling because she does not have an unfettered life estate as contemplated by the stipulation.

We must remand to the district court for further proceedings to evaluate the value of Betty Gibbons' property interest. The parties stipulated that Betty was forty-nine years old and had no intention of either remarrying or moving from the property. Thus, the remarriage and occupancy requirements would not diminish the value of her interest from that stipulated for a "life estate." The requirement of mortgage payments, however, placed entirely on her, could diminish the value of her interest unless that mortgage has been paid off. If there is an outstanding mortgage, the valuation problems on remand will be similar to valuing a condemnation action in which a tenant with a long-term favorable lease must be compensated.

REVERSED AND REMANDED for further proceedings in accordance with this opinion.